## STRUTHERS (city) v CLAY

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 4, 1932

W. O. R. Johnson, Youngstown, for plaintiff in error.

C. W. Osborne, Youngstown, and Andrew H. Rheuban, Youngstown, for defendant in error.

ROBERTS, J.

It is not understood to be claimed that the plaintiff was guilty of negligence in operating his car on this dark and foggy morning over this road where the accident happened, and presumably the municipality would be reluctant to claim it was negligent to operate a car in the night season or in a fog over one of its improved roads.

Evidence has been introduced upon the subject of the health and mental condition of the plaintiff for some time preceding the accident; that he had been for a week or such a matter in a sanitarium; that he had been subject to some delusions. It does not appear to be in evidence, however, that his mentality was impaired at the time of the accident or that he was not acting with ordinary judgment and discretion in attempting to make this trip, and his previous mental condition is not thought to be important in the issues of this case.

With the general verdict the jury returned answers to certain interrogatories which were submitted, from which the mental attitude of the jury concerning the issues may be to a considerable extent determined. Interrogatory number one:

"Did the plaintiff use ordinary care in driving his automobile upon Garfield Street March 29th, 1929?
A. Yes."

Interrogatory number two:

"Did plaintiff's automobile come in contact with the manhole?
A. Yes."

Interrogatory number three:

"Did the city of Struthers on March 29th, 1929, have Garfield Street free from nuisance and in reasonably safe condition for travel?
A. No."

Interrogatory number four:

"In what respects, if any, did the city of Struthers fail to keep Garfield Street free from nuisance and in reasonably safe condition for travel?
A. Garfield Street should have guard rails, and should be kept in safe condition to drive on."

Interrogatory number five:

"Did Oscar Clay go over the embankment at the indentation east of the manhole?
A. No."

Liability of the city is sought to be predicated upon the provisions of §3714, GC, reading in part as follows:

"The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts within the corporation, and shall cause them to be kept open, in repair and free from nuisance."

As perhaps of some indication of the duty owed by public authorities upon the proposition of safeguarding alleged dangerous conditions such as excavations, it may be suggested by analogy that had this accident occurred outside of a municipality, then certain long existing provisions of the General Code would have made it the duty as expressed in the statute to erect guard rails at the ends of bridges, five feet high; at the sides of approaches to bridges, six feet high; and at perpendicularly washed banks, eight feet high, and of otherwise keeping the highway in repair.

This duty of maintaining such conditions was for a long time placed upon the county commissioners, and now by somewhat recent legislation, in part, at least, has become the duty of the State Highway Commission. However, this accident did not occur outside of a municipality, and the concrete question for determination so far as the question of barriers is concerned, is whether or not the condition of the highway constituted a nuisance.

It may be observed that the construction of an ash road of loose material in its nature while not of itself presumably negligence, is not the safest kind of a road.

It is subject to erosion. by the elements, to displacement into ruts or depressions where wheels travel ordinarily result to some extent. The manhole seems to have been located not in the center of the ash improvement but where the left wheels of vehicles traveled or in the depression on the left side to the extent that such depression existed, and it may be observed in this connection also that such a material as ashes would be subject to being disturbed and displaced by vehicular traffic and a depression would naturally be caused and if not taken care of exist immediately adjacent to an unchanging object such as a metal catch basin, and it would be a natural result that in course of time the ashes would wear or be worn away from the catch basin. There is some dispute in the testimony as to this precise condition at the time of the accident. Some evidence in the way of pictures and otherwise indicates that the ashes were substantially flush with the catch basin, testimony of witnesses that the ashes were some six or seven inches below the top of the catch basin, testimony of a boy who some three weeks before the accident struck his bicycle against the catch basin and disabled it, that the elevation of the catch basin was at that time some three inches above the roadway. Perhaps it might properly be borne in mind also that the catch basin, located only where it would be struck by one wheel, or by the wheel on one side of a passing vehicle would be much more dangerous, especially to a motor vehicle than if it had extended clear across where both wheels would have received an equal compact and there would not be a tendency as a result of the collision for a car to be thrown to one side, as it would be had it come in contact only with the wheels on one side.

This road was not wide enough for vehicles, as is evident from the pictures and from the testimony, to pass going in opposite directions. However, no proposition of that kind is in this case. Upon the general proposition as to the care exercised in the construction and maintaining of this road, it is evident that the defendant had in mind that vehicles going in opposite directions could pass and that in passing one or the other would be obliged to move to the right or left of the ash surface to the descending berm at the side of the road.

Rather exhaustive examination has been made by the court to determine what rules may be applicable as established by decisions or in elementary treatises, as to under what circumstances an excavation in or contiguous to a roadway may be considered a nuisance and liability for damages arise by reason of its continued existence. It can readily be recognized that these excavations in cases of this sort vary greatly in their nature. Scarcely any two may be discovered where the conditions are practically the same, and the question whether such .conditions constitute nuisance or not, by reason of this fact, is generally considered by authorities to be a question of fact to be determined by the jury, and our research has resulted in the finding of no authority which states the rule more clearly and with greater applicability to this case than the case of **Village of Mineral City v Gilbow et, 81 Oh St**, 263. This may be regarded as a leading case, as its citation is frequently observed in the examination of other authorities. The second syllabus reads as follows:

"In deteirmning whether it is necessary, in a particular case, that a barrier should be erected in order to make the highway safe for travelers thereon, the true test is not the distance from the highway of the dangerous object or place, whether it be much or little; but whether a traveler in passing along the highway and exercising ordinary care, would be subjected to such imminent danger that it would require a barrier to make the highway safe."

Applying this authority to the issues in this case, it is apprehended that the existence of this declivity immediately contiguous to and parallel within the limits of the roadway, presents such a situation as requires the submission to the jury of a determination of fact as to whether or not the exercise of reasonable or proper care on the part of the defendant municipality requires it to erect guard rails or lights it in such manner as to either protect the public from danger of going over this embankment or give warning of its existence.

Little doubt can be entertained but what the automobile of the plaintiff did as a matter of fact strike the manhole. Plaintiff testifies and his testimony is uncontradicted that driving at twenty miles an hour, or about that speed, his car struck something, he was thrown from behind the steering wheel, lost control of it, and as he somewhat graphically expresses it, "the next thing he knew, he didn't know anything." No witness speaks of having discovered anything else on the roadway which presumably could have caused this jolting of the automobile except the manhole. Evidently the accident occurred in close proximity to the manhole, and in any event

this court would not be justified in saying if so determined by the jury that it did not strike the manhole and that was not a negligent condition proximately causing the accident.

It is probably true that both the manhole and the declivity over which the car fell were both proximate contributing causes of the accident. It is therefore concluded that these issues were properly submitted to the jury for determination and the mental attitude of the jury is determined to a considerable extent by the interrogatories answered.

It is claimed on the part of the plaintiff in error that there was error in the trial court permitting the jury to view the scene of the accident when the evidence had substantially all been introduced. A small amount of testimony was accepted thereafter. We do not find error in the conduct of the court in so permitting the view. That is a matter, so far as we know, generally discretionary with the court and no fixed time has been established by any decision or cited in this case when the view shall take place. Whether a view shall be allowed is discretionary with the court and the view is usually arranged to meet the convenience of the court, the witnesses and jurors, at some time during the trial.

It seems to have been suggested by counsel for plaintiff in error that the burden was on the plaintiff to show that he was not guilty of contributory negligence. Such would not be the rule in this case. His testimony did not raise any such presumption casting any burden upon him. It is also urged by counsel for plaintiff in error that the city of Struthers was entitled to notice of the condition of this roadway if it was dangerous, or if its condition constituted negligence. A municipality is entitled to notice when a dangerous condition exists in a public street not placed there by the city itself, for which the city is not responsible and has no knowledge, or the condition must have existed such a length of time that knowledge can be presumed. This rule, however, does not extend to conditions for which the city itself was responsible and which it in effect placed there itself. Perhaps some knowledge should have come to the city of the condition of the ash roadway if that was as a matter of fact defective, and even that proposition is subject somewhat to the presumed knowledge of the city that it had constructed a sort of improved road by using a material which if not watched with considerable regularity would develop into depressions or ruts, and especially in connection with the existence of the manhole, which would cause a condition somewhat dangerous at that particular point.

The city constructed this improved road along on the top of this high bank and must be assumed to have had knowledge of its existence from the time the road was improved by the city. Notice is for the benefit of some one who otherwise did not have knowledge, and he who has knowledge has no right to claim right to a notice. It is only to give information where information does not otherwise exist, and the location of the road along the declivity was something that the city always had knowledge of from the time it took over the charge of the road.

It is claimed that the verdict in this case was excessive. But little will be said upon that subject. This plaintiff was twenty-nine years of age, was a man dependent for a livelihood upon physical exertion or manual labor. This accident resulted in a fractured vertebrae in his back, leaving him, as the medical testimony indicates, and testimony otherwise received in the case, with lessened mobility of his back, pain caused by exertion, with reduced ability to perform labor, and under the circumstances we are not able to say that the verdict was so large as to justify a reversal upon that ground.

We think that this constitutes a suggestion of practically all that has been urged in this case. In any event, we feel quite well assured that in the careful examination we have given to the issues and claims of the parties, that we did not fail to consider any proposition urged, and the conclusion has been reached that this court would not be authorized to or justified in disturbing this verdict or finding that prejudicial or reversible error occurred in the trial, and the judgment of the Court of Common Pleas is therefore affirmed.

Judgment affirmed.

FARR and POLLOCK, JJ, concur.